**CLOSED**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARY KINSELLA, Administratrix ad Prosequendum of the Estate of Michael Kinsella, and individually, <br><br> Plaintiff, <br><br> v. <br><br> RAPID DRUG DETOX MARKETING, LLC., et al. <br><br> Defendants. | Civil Action No. 12-cv-1176 (PGS) <br><br> MEMORANDUM AND ORDER |

SHERIDAN, U.S.D.J.

This matter comes before the Court on five motions. The first is a motion to transfer the case to the Eastern District of Michigan brought by Defendants Jeanne Katz, Shirley A. Cohorst and Rapid Drug Detox Marketing, LLC ("RDD"). The remaining four motions are motions to dismiss brought by other defendants. For the following reasons, the motion to transfer is granted, and the other motions are denied without prejudice.

I.

The Complaint alleges the following facts. Decedent, Michael Kinsella, a resident of New Jersey, was introduced to opioid medication when it was prescribed to treat the pain associated with an ongoing medical condition. When attempting to cease using opiates, Mr. Kinsella realized he was physically dependent on the drugs. With the desire to end his opiate addiction, Mr. Kinsella

considered medically supervised drug detoxification, and he contacted RDD, a limited liability company located in Michigan, for information. RDD responded and asked preliminary questions concerning his background to determine whether the drug detoxification process would be appropriate. More specifically, on August 19, 2010, RDD Centers solicited Mr. Kinsella via email. These emails included questionnaires soliciting his medical and drug use history as well as instructions for his preparation for the detoxification process. This email was followed with a phone call from RDD. RDD literature emphasized the safety of the procedure.

On September 13, 2010, Decedent drove to Michigan to the offices of RDD. Per instructions from RDD, he checked into the Hampton Inn in Commerce Township, Michigan, which is owned by Commerce Hospitality Management, Inc. RDD had previously advised Decedent that he was required to stay at this Hampton Inn both before his procedure and during his post detox recovery.

The following day, Decedent submitted to a blood test and completed medical history forms under the treatment of Edith Nemeth, M.D., a Michigan licensed physician, at the RDD facility. He also was examined by staff psychologist Gary J. Gunther, Ph.D., a Michigan licensed psychologist. Dr. Nemeth also referred Decedent to Alan Chernick, M.D., a Michigan licensed physician for a pre-procedure echocardiogram.

On September 15, 2010, Mr. Kinsella underwent a procedure known as "opiate reversal" under general anesthesia at RDD's Michigan facility. This procedure purportedly involved the administration of drugs that replace opiates on the body's receptors, forcing the opiates into the bloodstream so they can be excreted by the kidneys and thus eliminated. Severe withdrawal would begin immediately upon initiation of this process.

After the procedure, Mr. Kinsella was required to remain in the Hampton Inn for his post

surgery recovery. RDD assigned defendant Roselia Campos to serve as a "drug free caretaker" for Decedent. RDD required all of its patients, including Decedent, to stay at the Hampton Inn with a caregiver for post operative recovery.

While Mr. Kinsella was at the Hampton Inn, during his post procedure recovery, Decedent suffered acute distress[1] and was later pronounced dead at the Henry Ford Hospital located in West Bloomfield, Michigan on September 19, 2010.

## II.

Generally, a district court may transfer a civil matter to another district if it is appropriate under the circumstances. The pertinent statute provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of the statute "is to prevent the waste of 'time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense . . . .'" *Ricoh Co., Ltd. v. Honeywell, Inc.*, 817 F. Supp. 473, 479 (D.N.J. 1993) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Generally, the decision to transfer an action is within the discretion of the trial court. *See Cadapult Graphic Sys. v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 564 (D.N.J. 2000). In exercising such discretion, the court is free to consider "all relevant factors," including private and public interest factors that closely mirror those in a forum non-conveniens analysis. See *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). The private interests to be considered include plaintiff's forum preference as manifested in the original choice, the defendant's preference, whether the claim arose elsewhere, the convenience of the parties as indicated by their relative physical and financial condition, the

---

[1] Defendants claim Mr. Kinsella may have committed suicide since a suicide note was found in his hotel room.

convenience of the witnesses, and the location of books and records.

The public interests to be considered include the enforceability of the judgment, practical considerations that may make the trial easy, expeditious, or inexpensive, the relative administrative difficulty such as court congestion, the local interest in deciding local controversies, the public policies of the fora, and the familiarity of the trial judge with the applicable state law in diversity cases. These public factors interrelate with the private interests because the public interest considers where the claim arose, the convenience of parties and witnesses, location of books and records, and any local interest in deciding localized controversies.

The moving party has the burden of persuasion, which requires not only that the alternative forum is "adequate but also more convenient than the present forum." *Ricoh*, 817 F. Supp. at 480 (citing *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38 (3d Cir. 1988)).

It is appropriate to transfer the case to the Eastern District of Michigan for the following reasons:

1. The case could have been brought in Michigan initially as the statute requires (28 U.S.C. § 1404(a));

2. The Complaint centers around an allegedly invasive medical procedure performed in Michigan;

3. The licensed medical professionals who performed the detoxification procedure worked, resided, and were licensed in Michigan;[2]

---

[2] The record is unclear as to whether Defendant Rosalia Campos resides in Michigan; it is clear however that she is Michigan-licensed and worked in Michigan when the events at issue in this litigation transpired. The individual Defendants Shirley A. Cohorst, Edith Nemeth, Fary Gunther, Jesse Perez, and Jeanne Katz all reside in the Eastern District of

  4. All of the books and medical records associated with the procedure are maintained in the ordinary course in Michigan;

  5. Post operative recovery occurred in Michigan;

  6. Decedent's final hospitalization occurred in Michigan; and

  7. If an autopsy occurred, the records of same are located in Michigan.

 The private interests at stake in this litigation weigh in favor of venue in the Eastern District of Michigan. While the Court is mindful that Plaintiffs, New Jersey residents, would prefer to litigate in this District, "[transfer] should not be automatically barred when a plaintiff has filed suit in his home forum." *See Axxa Commerce, LLP v. Digital Realty Trust*, 2009 U.S. Dist. LEXIS 94103 (D.N.J. 2009). "[I]f the balance of conveniences suggests that trial in the chose forum would be unnecessarily burdensome for the defendant or the court, [transfer] is proper." See *Id.* Convenience of witnesses has been called the most powerful factor governing the decision to transfer a case. *See In re Eastern Dist. Repetitive Stress Injury Litig.*, 850 F. Supp. 188, 194 (E.D.N.Y. 1994).

 The public interests also weigh in favor of transfer. Because nearly all of the Defendants and potential witnesses reside in Michigan, conducting the trial will be easier, more convenient and less expensive in Michigan. In addition, Michigan has a local interest in processing litigation against its doctors who are licensed in Michigan. Clearly, the interests of Michigan outweigh any interest New Jersey has. *Axxa Commerce, LLP v. Digital Realty Trust, L.P.*, 2009 U.S. Dist. LEXIS 94103, at *12-13 (D.N.J. Oct. 8, 2009). In addition, the motion by Defendants Gary Gunther and Edith Nemeth to dismiss for lack of jurisdiction may be moot if the case is transferred to Michigan.

---

Michigan.

Based on the foregoing, the public and private interests at stake in this case are best served by the transfer of this action to the Eastern District of Michigan.  Defendants' motion to transfer venue is granted.  The merits of the remaining four motions may be substantially changed due to the transfer to Michigan; as such they are denied as moot.

ORDER

This matter having been brought before the Court on motions by defendants;

IT IS on this 20th day of November, 2012

ORDERED that the motion to transfer the case to the Eastern District of Michigan (ECF No. 21) is granted; and it is further;

ORDERED that the remaining motions to dismiss (ECF Nos. 30, 31, 40 and 66) are denied as moot without prejudice.

*s/Peter G. Sheridan*  
PETER G. SHERIDAN, U.S.D.J.